No. 88-432

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

AMERICAN FEDERAL SAVINGS AND LOAN
ASSOCIATION,

                Plaintiff and Respondent,

        -vs-

A. LEE BUCKLAND, THE MONTANA POWER
COMPANY, LES MORRISON, d/b/a CITY
SIGN, EDWARD C. AND MARILYN EBERLY,
et al.,

                Defendants and Appellant.


APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis & Clark,
               The Honorable Thomas Honzel, Presiding Judge.


COUNSEL OF RECORD:

        For Appellant:

            Jackson & Rice; Gregory A. Jackson, Helena, Montana

        For Respondent:

            Alan L. Joscelyn; Gough, Shanahan, Johnson & Waterman,
            Helena, Montana


                              Submitted on Briefs:   June 1, 1989

                                  Decided: August 11, 1989

Filed:

_____
                        Clerk

Mr. Justice William E. Hunt delivered the Opinion of the Court.

A. Lee Buckland, defendant and appellant, appeals from the foreclosure of a trust indenture on his property entered in favor of American Federal Savings and Loan Association, plaintiff and respondent, by the District Court of the First Judicial District, Lewis and Clark County. American Federal cross-appeals on the issue of a mechanic's lien entered in favor of Buckland. We affirm in part and remand for a recalculation of amounts due under the trust indenture.

The issues raised on appeal are:

1. Whether American Federal improperly carried forward a mechanic's lien from one property to another.

2. Whether American Federal breached its duty of good faith and fair dealing by mismanaging rental property.

3. Whether the District Court properly found that American Federal was entitled to foreclosure of its note secured by a trust indenture on Buckland's property.

In 1978, Buckland, a real estate broker, purchased an apartment building on Rodney Street in Helena, Montana, on a contract for deed. Buckland refinanced the property by obtaining a loan with American Federal. Originally, the loan was secured by a trust indenture on the property for $35,000.00 but it was later refinanced for $45,000.00.

In 1981, Buckland hired Blackfoot Electric to rewire the building. Blackfoot submitted a written bid for the job at $4,700.00 but ran into unanticipated problems. Consequently, Blackfoot billed Buckland for over $9,000.00. Because Buckland did not pay the bill, Blackfoot filed a mechanic's lien against the property in January of 1982 for $9,148.74.

In 1983, Buckland arranged an exchange transaction involving his Rodney Street property, a Warren Street property, also located in Helena, and a fifteen-acre tract portion of a subdivision located in Lewis and Clark County known as Sunny Vista. The exchange involved Buckland, as owner of the Rodney Street property, Thomas Fenton, as the owner of the Warren Street property, American Federal, as the holder of a first trust indenture on the Rodney Street property and the holder of a first trust indenture on the Warren Street property, Edward Eberly, as the holder second trust indenture on the Warren Street property, and Robert King, as the owner of the Sunny Vista tract.

However, before the exchange could take place, the Blackfoot mechanic's lien needed to be settled. Since American Federal held a security interest in Buckland's Rodney Street property, its approval was necessary to settle the mechanic's lien and complete the exchange of properties. Consequently, American Federal acted as pointman, with Buckland's input, in the mechanic's lien negotiations. The mechanic's lien was settled for $10,500.00, which totaled $11,700.00 with interest. Buckland objected to settling the lien for that amount which included the original $9,148.74 lien plus costs. American Federal paid the settlement and took assignment of the lien.

On July 22, 1983, the properties were exchanged and, as part of the exchange, American Federal loaned Buckland $11,700.00, the amount paid by American Federal on the mechanic's lien, which was secured by a trust indenture on Buckland's newly acquired property. The trust indenture, when added to a previous debt owed American Federal, totaled $29,700.00. Further, Buckland's Sunny Vista property was subject to a trust indenture securing a $29,700.00 debt due American Federal; Buckland assumed responsibility for

3

Fenton's $9,479.37 debt to Eberly; Buckland took on a third trust indenture for a $5,000.00 debt he owed to King; and the mechanic's lien, settled at $10,500.00, was carried forward.

Subsequently, Buckland traded his Sunny Vista property for a Billings Avenue duplex located in Helena, valued at $48,500.00 and owned by Sharon Hubbell. Hubbell owned the Billings Avenue property subject to a contract for deed which was transferred upon the exchange. The holders of the first, second and third trust indentures against the Sunny Vista property agreed to transfer their trust indentures to the Billings Avenue property in order to facilitate the Buckland-Hubbell exchange. The mechanic's lien was also carried forward. In addition, on August 3, 1983, American Federal loaned Buckland $4,477.00. The loan was secured by a fourth trust indenture on the Billings Avenue property.

Hence, Buckland's Billings Avenue property was subject to the following trust indentures:

> (1) A first trust indenture of July 22, 1983, to First Montana Title, as trustee, and in favor of American Federal Savings and Loan Association, as beneficiary, to secure payment of $29,700.00, with interest at 13-1/2 percent per annum, _payable in monthly installments_.

> (2) A second trust indenture of July 22, 1983, to First Montana Title, as trustee, and in favor of Edward C. and Marilyn Eberly, as beneficiaries, to secure payment of $9,479.37, with interest at 11 percent per annum, payable in semiannual installments.

> (3) A third trust indenture of July 22, 1983, to first Montana Title Insurance Company, as trustee, and in favor of Robert King and Margaret King, as beneficiaries, to secure payment of $5,000.00, with interest at 10 percent

4

per annum, payable in annual installments.

(4) A fourth trust indenture, of August 3, 1983, to First Montana Title Insurance Company, as trustee, and in favor of American Federal Savings and Loan Association, as beneficiary, to secure payment of $4,477.00, with interest at 15 percent per annum, payable in October 1983. The security for this payment was "the proceeds of real estate commissions."

The first and fourth trust indentures are the subject of this dispute.

Buckland's payments to American Federal under the first trust indenture (the July note) were $358.60 per month to begin on August 1, 1983. The fourth trust indenture (the August note) was due, in full, in October of 1983. American Federal notified Buckland by letter that the July and August notes had gone into default--the July note in September of 1983 and the August note in October of 1983.

In 1983, Buckland made payments on the July note in the total amount of $3,644.46. In January of 1984, Buckland made only two payments towards the July note--one in the amount of $291.60 and the other in the amount of $67.00.

In June of 1984, Buckland moved to Georgia and arranged for Kelly Patzer to manage the Billings Avenue property and remit rents collected to American Federal for application to the July and August notes owed on the Billings Avenue property. On September 24, 1984, American Federal received a letter from Buckland informing it of Buckland's instruction to Patzer to bring American Federal the rents, "to be applied to the loans." On October 29, 1984, American Federal sent Buckland a letter informing him it was applying

rents received on his account to satisfy the August note first and then to satisfy the July note.

In July of 1984, American Federal advanced monies for the payment of taxes and insurance due on the property. Early in 1985, Patzer turned management of the Billings Avenue property over to Steve Schmitz. Under Schmitz's management, rents were not remitted to American Federal. In August of 1985, Schmitz turned management of the property over to American Federal at which time American Federal advanced monies towards maintenance, utilities and repairs. At that time, one rental unit was vacant and the other was four months delinquent. American Federal reduced the rent on the vacant rental and shortly thereafter found a tenant. Rents received under American Federal's management were not applied to the July note but were documented in a general ledger non-interest bearing account which totaled $9,734.81 through November 22, 1987 ($1,114.49 of the rents collected were applied to the August note which was paid off in September of 1985).

In January of 1986, American Federal commenced foreclosure proceedings on its trust indenture securing the July 1983 note. Buckland returned to Helena in May of 1986. American Federal had originally scheduled a trustee's sale but it was cancelled due to the insistance of Buckland, Eberly and King. American Federal settled the claims of Eberly and King prior to trial but commenced with a judicial foreclosure in District Court against Buckland. Buckland counterclaimed on the issue of breach of American Federal's duty of good faith and fair dealing.

On November 23, 1987, the case was tried in the District Court, sitting without a jury. The court's findings of fact and conclusions of law included the following:

1. American Federal is entitled to foreclosure of its security interests in the property but was not entitled to a deficiency judgment nor attorney fees;

2. The money paid to satisfy the mechanic's lien on the Rodney Street property should not have been carried forward to the Billings Avenue property;

3. Buckland did not establish by a preponderance of the evidence that American Federal breached the implied covenant of good faith and fair dealing;

4. Rents received by American Federal beginning in August of 1985 should not have been put in the general ledger account; and

5. There should be a recalculation of amounts due American Federal.

On April 11, 1988, Buckland filed a post-trial motion to amend the findings of fact and conclusions of law and a motion for a new trial. On April 14, 1988, American Federal filed cross-motions on the same subject matter. The motions were denied under Rule 59(d), M.R.Civ.P. Buckland appeals and American Federal cross-appeals.

In Dennis v. Tomahawk Services, Inc. (Mont. 1989), 767 P.2d 346, 347, 46 St.Rep. 69, 70, we provided:

The standard of review for a civil case for a judge sitting without a jury is whether or not the District Court's findings are clearly erroneous. (Citation omitted.) . . . this Court will not substitute its judgment for that of the trial court's absent that showing, even where there is evidence in the record to support appellant's contentions.

The first issue raised on appeal is whether American Federal improperly carried forward a mechanic's lien from Buckland's Rodney Street property to his Billings Avenue property.

The July 22, 1983, $29,700.00 note, secured by a trust indenture, originally applied to Buckland's Rodney Street

property. The note was transferred to the Sunny Vista property and eventually to the Billings Avenue property under a complicated property exchange.

Buckland argues, and correctly so, that the $29,700.00 figure was inflated because it included the $10,500.00 ($11,700.00 with interest) mechanic's lien which, according to the Rodney Street closing statement, was paid from the proceeds of the $65,000.00 sale price received from Fenton on the Rodney Street property. (No actual money changed hands as the transaction was on an exchange basis.) Thus, the July note need be reduced by the amount of the mechanic's lien lest American Federal recover twice.

The second issue raised on appeal is whether American Federal breached its duty of good faith and fair dealing by mismanaging the Billings Avenue rental property. Buckland contends that for numerous reasons, American Federal breached its duty as set forth in § 30-1-203, MCA:

> Every contract or duty within this code imposes an obligation of good faith in its performance or enforcement.

In June of 1984, Buckland moved to Georgia, leaving management of the Billings Avenue property in the hands of Kelly Patzer. Patzer was instructed to remit rents received to American Federal as payments on Buckland's July and August notes. On September 24, 1984, American Federal received a letter from Buckland which read in part: "I have instructed Kelly to bring the rent into you to be applied toward the loans."

On October 29, 1984, American sent Buckland a letter informing him that it was applying rents received first to satisfy the August note and next to satisfy the July note. Buckland argues that this was a breach of American Federal's

8

duty of good faith and fair dealing since it had an obligation to apply rents to July note before the August note. We disagree.

The relationship between bank and customer is that of debtor-creditor. Under § 28-1-1106(2), MCA, when a debtor owes more than one debt and does not direct the creditor as to how payment is to be applied, the creditor may apply the payment to any obligation owing. See also, National Bank of Montana v. Bingham (1931), 91 Mont. 62, 5 P.2d 554.

In the present case, Buckland never instructed American Federal as to which note to apply rents to and he never objected to the order of application of rents until threatened with foreclosure. American Federal duly notified Buckland of its intention to apply rents as it did and cannot now be said to have breached its duty of good faith and fair dealing for doing so.

Further, in 1985, Patzer turned management of the Billings Avenue property over to Steve Schmitz who turned management of the property over to American Federal in August of 1985. Buckland argues that when American Federal took over management it breached its duty of good faith by arbitrarily reducing rents and failing to qualify a delinquent renter for Helena Housing Authority guaranteed payments. American Federal notes, however, that it reduced rent on a vacant apartment in order to find a renter and shortly thereafter found one. Further, the record indicates that American Federal did attempt to qualify the delinquent tenant for the Helena Housing Authority guaranteed payments but Helena Housing required Buckland's signature which American Federal could not obtain due to Buckland's absence from the state. There was no breach of duty by American Federal on this contention.

Buckland also argues that American Federal breached its duty of good faith by placing payments, which should have applied to the July note, in a non-interest bearing general ledger account presently totaling $9,734.81 ($3,092.51 as of the date the complaint was filed). He argues that interest on the note accrued at a higher rate because the amount had not been reduced.

The trust indenture provided that when the lender is in possession, rents received shall apply to the cost of management and then to the sums secured by the trust indenture. Instead of applying the sums in this manner, sums were merely documented in the ledger. Under the terms of the agreement, American Federal had the authority to apply rents received to the cost of management. Although American Federal expended $4,636.95 paying taxes, (not including an additional $433.29 on the first half taxes due in November of 1987), insurance, maintenance, utilities and repair expenses on the property, it did not deduct these costs from the general ledger account as provided for in the trust indenture. On the same note, it did not so apply the funds toward the interest nor the principal owed by Buckland on the July note. American Federal argues that it let the funds lay dormant in the account because there were never enough rental receipts at any one time to pay off interest accrued on the note. While we do not condone the handling of the funds in the general ledger account, the evidence under these circumstances is insufficient to hold that American Federal breached its duty of good faith on this allegation.

Buckland also contends that American Federal breached its duty of good faith and fair dealing in settling the mechanic's lien for $10,500.00. The original bid for rewiring the Rodney Street building was $4,700.00. Due to unanticipated problems, Blackfoot billed Buckland $9,148.74.

Buckland, who proposed to sell the property, needed American Federal's approval since it had a security interest therein. Hence, American Federal negotiated the settlement, with Buckland's input, for $10,500.00, which included the lien plus costs. Buckland objected to this amount. However, the settlement of the lien was necessary before the exchange could take place since a mechanic's lien is prior to a trust indenture. See Home Interiors, Inc. v. Hendrickson (1984), 214 Mont. 194, 692 P.2d 1229. Buckland, an experienced real estate broker, opted to go through with the settlement, although he found it objectionable, in order to facilitate the Rodney Street property exchange and admitted that the settlement was in his own best interests. We cannot, therefore, hold that a breach of American Federal's duty on this contention is founded.

Buckland did not establish by a preponderance of the evidence that American Federal breached its duty of good faith and fair dealing. The evidence is insufficient.

The last issue raised on appeal is whether American Federal was entitled to foreclosure of its July 1983 note secured by a trust indenture on Buckland's Billings Avenue property.

As noted, Buckland's Billings Avenue property was subject to four trust indentures upon transfer. A first trust indenture secured the payment of the July note in the amount of $29,700.00 with interest at 13½ percent per annum, payable in monthly installments at $358.60. Payments were to begin August 1, 1983.

On September 2, 1983, American Federal sent Buckland a letter stating that the loan payment had not been received. Buckland proceeded to make payments in the total amount of $3,644.46 for 1983. In January of 1984, Buckland made only two payments toward the July note--one in the amount of

11

$291.60 and the other in the amount of $67.00. No further payments were made by Buckland toward the July note.

On April 5, 1984, American Federal once again sent a letter to Buckland informing him that his loan payment was delinquent. On September 19, 1984, American Federal sent Buckland a letter which broke down amounts due on both the July and August notes. The letter also stated that American Federal was willing to work with Buckland on the notes but required a response by September 30, 1984, or it would proceed with foreclosure.

Buckland did respond on September 24, 1984, stating that rents from his Billings Avenue property were to be deposited by the current manager of the building, Patzer, and were to be "applied to the loans." On October 29, 1984, American Federal responded that it would first apply the rents to the August note until paid off and then to the July note. American Federal added that as long as "rent continues to come on a regular basis the foreclosure will be held off."

However, early in 1985, management of the property was turned over to Steve Schmitz. Under his management, there were vacancies and problems with remitting rents collected to American Federal. In August of 1985, Schmitz turned management over to American Federal. American Federal applied the rents first to the August note, which was paid in full in September of 1985, and the trust indenture was released. Through November of 1987, American Federal collected rents in the amount of $9,734.81 which were placed in a non-interest bearing general ledger account. As noted, the funds could have been used towards American Federal's costs of managing the Billings Avenue property but were not. Although we disagree with the handling of the funds, the funds, if applied to the July note, would still have been insufficient to bring the note current. The foreclosure was proper.

12

Neither Buckland in his appeal nor American Federal in its cross-appeal proved the District Court's findings to be clearly erroneous. We will not disturb the court's findings.

A problem remains as to the amount due on the July 1983 note. The note was for $29,700.00 which included sums improperly carried forward on the Blackfoot mechanic's lien. A recalculation on the amount due by Buckland is necessary. We note that when recalculation occurs consideration must be given to principal, interest, late charges, expenses of managing the Billings Avenue property, and sums remaining in the general ledger account.

Affirmed in part and remanded for a recalculation on amounts due under the trust indenture.

_William E. Hunt Sr._
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_John C. Sheehy_

_R. C. McDonough_
Justices